IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| VICKIE LANGHAM, individually and as named representative of a class of others similarly-situated, )<br>)<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>WALGREEN CO., )<br>)<br>Defendant. ) | <br><br><br><br><br><br>CIVIL ACTION NO. 04-0299-CG-B |

### ORDER

This matter is before the court on defendant's motions to dismiss (Docs. 8, 18), plaintiff's responses thereto (Docs. 12, 23), defendant's replies (Doc. 16, 25), plaintiff's supplemental response (Doc. 30), and defendant's response to plaintiff's supplement (Doc. 31). The court finds that in order for a violation of the Robinson-Patman Act to occur under the circumstances alleged in the amended complaint, the "disfavored purchaser" must have been in competition with the "favored purchasers." Plaintiff does not allege that she was in competition with the "disfavored purchaser." Therefore, Count One of plaintiff's amended complaint is due to be dismissed. The court also finds that there is no private right of action for an alleged breach of ALA. CODE § 34-23-115. Therefore, Count Two of plaintiff's amended complaint is also due to be dismissed.

### I. BACKGROUND

The two-count amended complaint (Doc. 17) alleges that plaintiff, a resident of Baldwin County, Alabama, purchased prescription drugs from a Walgreen store located in Daphne,

1

Alabama.[1]  Plaintiff reports she originally had insurance which provided payment for prescriptions, but that at the end of the summer of 2003, she no longer had medical insurance covering prescription purchases.  The complaint alleges that upon the termination of her prescription health insurance coverage, she was charged a higher price than customers who had medical insurance and purchased prescription drugs of the same grade and quality.  In Count One, plaintiff alleges violations of the Robinson-Patman Act, 15 U.S.C. § 13(a), and claims treble damages under the Clayton Act, 15 U.S.C. § 15.  In Count Two, plaintiff alleges she was injured by defendant's violation of the Alabama Third Party Prescription Program Act, ALA. CODE § 34-23-115.

## II. ANALYSIS

### A. Dismissal Standard

Upon a motion to dismiss, the scope of the review is limited to the four corners of the complaint. St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002) (citations omitted).  A motion to dismiss should not be granted "unless the plaintiff can prove no set of facts which would entitle him to relief." Martinez v. American Airlines, Inc., 74 F.3d 247, 248 (11th Cir. 1996) (quoting Peterson v. Atlanta Housing Authority, 998 F.2d 904, 912 (11th Cir. 1993)).  In making this determination, the court must "take all the allegations in the complaint as true, and view the complaint in the light most favorable to the plaintiff." Id.  At a minimum,

---

[1] The court notes that this case is very similar to another case filed the same day by an individual against two other corporations that own and operate drugstores in Alabama - Herndon v. Rite Aid Corporation, et al., 04-cv-0300-CG-B.  The complaint in the Herndon case and this case are almost identical except that the named parties are different.  Motions to dismiss were filed in both cases and have proceeded in a parallel fashion.  The arguments asserted in support and in defense of the motions to dismiss in both cases are also predominantly the same.  Thus, the court's analysis here will mirror the court's ruling in Herndon on the same issues.

the Federal Rules of Civil Procedure require "a short and plain statement of the claim" that "will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957) (quoting FED. R. CIV. P. 8(a)(2)).  However, to survive a motion to dismiss, a plaintiff may not merely "label" her claims.  "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Management, Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002) (quoting South Fla. Water Management Dist. v. Montalvo, 84 F.3d 402, 408 n. 10 (11th Cir. 1996) and Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1993)); see also  Associated Builders, Inc. v. Alabama Power Co., 505 F.2d 97, 100 (5th Cir. 1974) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true." citation omitted).  Dismissal should be granted pursuant to Rule 12(b)(6) if a complaint lacks an allegation regarding an element necessary to obtain relief.  See Pyles v. United Air Lines, Inc., 79 F.3d 1046, 1049 (11th Cir. 1996); Quiller v. Barclays American/Credit, Inc., 727 F.2d 1067, 1069 (11th Cir. 1984), adhered to en banc, 764 F.2d 1400 (11th Cir. 1985), cert. denied, 476 U.S. 1124 (1986).  The issue is not whether the plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." Little v. City of North Miami, 805 F.2d 962, 965 (11th Cir. 1986).

### B. Count One - Robinson-Patman Act

Defendant argues that plaintiff has failed to adequately allege all the necessary elements of a Robinson-Patman Act claim.  The Robinson-Patman Act provides:

> It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such

> commodities are sold for use, consumption, or resale within the United States...
> and where the effect of such discrimination may be substantially to lessen
> competition or tend to create a monopoly in any line of commerce, or to injure,
> destroy, or prevent competition with any person who either grants or knowingly
> receives the benefit of such discrimination or with customers of either of them....

15 U.S.C. § 13(a).  Defendant argues that Count One fails because it does not satisfy the "engaged in commerce" requirement of the Act.  Notably, plaintiff is an Alabama resident and the alleged purchases occurred in Alabama.  The original complaint stated that "the statute requires simply that the goods in at least one sale of the two alleged discriminatory sales must cross a state line, and <u>almost certainly</u> at least one did." (Doc. 1, ¶ 12, emphasis added).  Defendant asserts that such language is insufficient.  While it is questionable whether the above language constitutes an affirmative allegation that one of the sales was an interstate sale, the court notes that plaintiff's amended complaint clarified the matter by replacing "almost certainly at least one did" with "at least one did." (Doc. 17).  The court finds that the newly worded allegation alleges the required "engaged in commerce" element of a Robinson-Patman claim sufficiently to satisfy the notice pleading requirement.

Defendant also argues that the complaint fails to allege that the plaintiff and any of the unnamed "favored purchasers" are in competition.  Plaintiff responds that under the theory of her case, and the plain language of the statute, competition between purchasers is not a necessary element of her Robinson-Patman claim.  The Act states that certain discriminations in price are unlawful:

> where the effect of such discrimination may be substantially to lessen competition
> or tend to create a monopoly in any line of commerce, or to injure, destroy, or
> prevent competition with any person who either grants or knowingly receives the
> benefit of such discrimination or with customers of either of them...

15 U.S.C. § 13(a).  Plaintiff asserts that the above can be neatly broken into three different ways

to prove the element of "injury to competition." According to plaintiff, she is proceeding under the "or tend[s] to create a monopoly in any line of commerce" prong, which, she asserts, does not require that plaintiff be a competitor. While it is unclear to the court how the alleged discrimination in price "tends to create a monopoly in the line of commerce of health insurance in Alabama," that is what is alleged in plaintiff's amended complaint, and the court will assume that to be true for the purposes of this motion to dismiss. (Doc. 17). Plaintiff asserts that there are no cases anywhere that state that the plaintiff has to be a competitor when proceeding under the "tend[s] to create a monopoly in any line of commerce" prong of the statute. However, as plaintiff admits, that prong "is simply never used, or almost never, anyway." (Doc. 12, p. 11). Neither the court nor the parties have found any case specifically construing the "tend[s] to create a monopoly" portion of the statute. Plaintiff seems to think that the language of the Robinson-Patman Act is straightforward and clear. However, as the Supreme Court has stated, "precision of expression is not an outstanding characteristic of the Robinson-Patman Act." F.T.C. v. Anheuser-Busch, Inc., 363 U.S. 536, 542, 80 S.Ct. 1267, 1271 (1960) (quoting Automatic Canteen Co. of America v. Federal Trade Comm., 346 U.S. 61, 65, 73 S.Ct. 1017, 1020, 97 L.Ed. 1454 (1953)). The overwhelming case law in this Circuit holds that for a valid Robinson-Patman Act claim, there must be discrimination between competitors. National Distillers and Chemical Corp. v. Brad's Mach. Products, Inc., 666 F.2d 492, 496 (11th Cir. 1982) ("It is the well established law of this circuit that in the absence of substantial evidence of price discrimination between competitors in comparable transactions, an action will not lie under the Robinson-Patman Act." citations omitted); see also; Capital Ford Truck Sales, Inc. v. Ford Motor Co., 819 F.Supp. 1555, 1575 (N.D. Ga.1992) ("absent a difference in price offered to two

5

competing dealers, no Robinson-Patman claim exists" citing Anheuser-Busch supra); Southern Business Communications, Inc. v. Matsushita Elec. Corp. of America, 806 F.Supp. 950, 960 (N.D. Ga. 1992) ("it is clear that SBC has not even alleged a valid Section 2(a) claim" because "these two sales cannot result in price discrimination between 'competitors in comparable transactions.'").

> To constitute a Robinson-Patman wrong, the price discrimination must occur between competitors in comparable transactions-i.e., where persons receiving the different prices are in actual, functional competition with one another-and it must have the requisite effect upon actual or potential competition."

National Distillers, 666 F2d at 496 (citation omitted). Courts allow three types of violations under the Robinson-Patman Act: (1) "[p]rimary-line cases entail conduct - most conspicuously, predatory pricing - that injures competition at the level of the discriminating seller and its direct competitors" (2) "[s]econdary-line cases ... involve price discrimination that injures competition among the discriminating seller's customers ...; cases in this category typically refer to "favored" and "disfavored" purchasers" and (3) "[t]ertiary-line cases involve injury to competition at the level of the purchaser's customers." Volvo Trucks North America, Inc. v. Reeder-Simco GMC, Inc., 546 U.S. 164, 176, 126 S.Ct. 860, 870 (2006); see also Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 219 (2d Cir. 2004).

A primary-line competitive injury under the Robinson-Patman Act occurs when "[a] business rival has priced its products in an unfair manner with an object to eliminate or retard competition and thereby gain and exercise control over prices in the relevant market." Bailey v. Allgas, Inc., 148 F.Supp.2d 1222, 1231 (N.D. Ala. 2000) (quoting Brooke Group, Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 222, 113 S.Ct. 2578, 125 L.Ed.2d 168 (1993)). "In order to prevail on a Robinson-Patman primary-line claim, a plaintiff must establish below cost

pricing of the product and 'injury to competition.' " Id. (citing Brooke Group supra).  In the instant case, plaintiff does not allege that defendant sold products at rock bottom prices with the purpose of eliminating the competition, and such a scenario does not appear to be analogous to this case.  Nor does this case represent a "tertiary-line" claim, where purchasers' customers compete within a unified market region.  Plaintiff has no customers and so, obviously, she does not have customers that compete.

Perhaps plaintiff's claim is more analogous to a secondary-line claim, which "occurs where the discriminating seller's price discrimination injures competition among his customers." Blue Tree Hotels, 369 F.3d at 219.  "[S]econdary line injury customarily results when a large purchaser uses its vast purchasing power to obtain low prices from the manufacturers or distributors whose products it stocks, thereby enabling it to undersell competitors." Lycon Inc. v. Juenke,  250 F.3d 285, 288 (5th Cir. 2001) (citation omitted).  However, courts have consistently held that such claims require that the plaintiff be a competitor.  See e.g. Volvo Trucks, 546 U.S. at 176-177 ("Absent actual competition with a favored Volvo dealer, however, Reeder cannot establish the competitive injury required under the Act."); George Haug Co., Inc. v. Rolls Royce Motor Cars Inc., 148 F.3d 136, 141 (2d Cir. 1998) ("as a prerequisite to establishing competitive injury in a secondary line price discrimination case, a plaintiff must prove that "it was engaged in actual competition with the favored purchaser(s) as of the time of the price differential." citation omitted); Stelwagon Mfg. Co. v. Tarmac Roofing Systems, Inc., 63 F.3d 1267, 1271 (3d Cir. 1995) ("to establishing secondary line injury, a plaintiff must 'first prove that, as the disfavored purchaser, it was engaged in actual competition with the favored purchaser(s) as of the time of the price differential.'" citation omitted); M. C. Mfg. Co., Inc. v. Texas Foundries, Inc., 517 F.2d

1059, 1066 (5th Cir. 1975) ("To constitute a Robinson-Patman wrong, the price discrimination must occur between competitors in comparable transactions i.e., where persons receiving the different prices are in actual, functional competition with one another and it must have the requisite effect upon actual or potential competition."); Infusion Resources, Inc. v. Minimed, Inc., 351 F.3d 688, 692 (5th Cir. 2003) ("'a plaintiff' must first prove that as the disfavored purchaser, it was engaged in actual competition with the favored purchaser(s) as of the time of the price differential." citation omitted); Lewis v. Philip Morris, Inc., 355 F.3d 515, 521 (6th Cir. 2004)("In a secondary-line section 2(a) case, the plaintiff who is the disfavored purchaser, must show that it competes with the favored purchaser."); O'Byrne v. Cheker Oil Co., 727 F.2d 159, 164 (7th Cir. 1984)("under Section 2(a) of the Robinson-Patman Act (15 U.S.C. § 13(a)) there is no violation unless discrimination is 'in price between different purchasers' on the same level of competition." citation omitted); Godfrey v. Pulitzer Pub. Co., 276 F.3d 405, 410 (8th Cir. 2002) ("This generous standard for inferring injury to competition, however, is logically limited by the necessity that the purchasers be competitors in the first place." citation omitted).

      The court finds that the above holdings of various Courts, although they do not specifically construe claims arising solely under the "tend[s] to create a monopoly" portion of the statute, nevertheless, apply to plaintiff's claim in this case.  None of the cases state that it would not be necessary for the plaintiff to have been a competitor if plaintiff had brought her claim under the "tend[s] to create a monopoly" portion of the Act and instead broadly state that competition is required in all § 2(a) claims.  It would be illogical to conclude that the overwhelming number of cases that have made such broad statements all neglected to consider the portion of the § 2(a) under which plaintiff is not required to be a competitor.

In addition, the Robinson-Patman Act does not appear to have been enacted to prevent injury to non-competitors.  "For any antitrust violation, 'a plaintiff must make some showing of actual injury attributable to something the antitrust laws were designed to prevent.'" In re Visa Check/MasterMoney Antitrust Litigation,  280 F.3d 124, 134 (2d Cir. 2001) (quoting J. Truett Payne Co. v. Chrysler Motors Corp., 451 U.S. 557, 562, 101 S.Ct. 1923, 68 L.Ed.2d 442 (1981)).

> The Act's goal is to abolish unwarranted favoritism among all functional competitors, big or small.  Its objective is to assure "that businessmen at the same functional level ... start on equal competitive footing so far as price is concerned"; FTC v. Sun Oil Co., 371 U.S. 505, 520, 83 S.Ct. 358, 367, 9 L.Ed.2d 466 (1963); "to assure that all sellers regardless of size, competing directly for the same customers ... receive evenhanded treatment from their suppliers"; [FTC v.] Fred Meyer, supra, 390 U.S. [341] at 356, 88 S.Ct. [904] at 912.

Alan's of Atlanta, Inc. v. Minolta Corp.,  903 F.2d 1414, 1422 (11th Cir. 1990) (footnote omitted).  The "statutory language and legislative history are highly persuasive indicia of Congress' intent to outlaw price discrimination that tends to injure competitors, rather than competition in general." J.F. Feeser, Inc. v. Serv-A-Portion, Inc.,  909 F.2d 1524, 1533 (3d Cir. 1990).  "[T]he Robinson-Patman Act, unlike the Sherman Act, was meant less to protect consumer welfare than to protect small merchants." Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp., 175 F.3d 18, 23 (1st Cir. 1999).   The court finds that plaintiff has not alleged a proper Robinson-Patman violation because she has not alleged that she was in competition with the "favored purchasers."    Therefore, Count One of plaintiff's complaint is due to be dismissed.

### C. Count Two - Alabama Third Party Prescription Program Act

Defendant asserts that no private right of action exists for violations of the Alabama Third Party Prescription Program Act ("ATPPPA").    Plaintiff alleges that defendant violated

9

ALA. CODE § 34-23-115 which states:

> No agreement between a program administrator and a pharmacy shall establish reimbursement rates for services rendered to persons covered by the plan which are less than the usual and customary rates paid by consumers not covered by a third party plan for the same or similar services.

ibid.  The ATPPPA is contained in Title 32, Chapter 23 of the Alabama Code which includes the following provision as to the purpose of the act.

> The practice of pharmacy and the management and operation of pharmacies are hereby declared to affect the public health, safety and welfare of the people of Alabama, and thereby subject to regulation and control in the public interest. It is further declared to be a matter of public interest and concern that only qualified persons compound or dispense prescription drugs and medicines, and that pharmacies be managed in such a manner as to protect the public, and all provisions of this chapter shall be liberally construed to carry out these objects and purposes.

ALA.CODE § 34-23-2 (1975).  The court can find nothing in Title 34, Chapter 23 to indicate that a private right of action exists for violations of § 34-23-115.  To the contrary, Title 34, Chapter 23 expressly reserves to the Alabama State Board of Pharmacy the right to enforce the violations for the purpose of protecting the public interest. Title 34, Chapter 32, provides the following concerning the penalties for violating provisions of Chapter 32:

> Any person ...who violates any of the provisions of this chapter; or who willfully violates any published rule or regulation of the board; or who does any act described in this chapter as unlawful, the penalty for which is not herein specifically provided, shall be guilty of a misdemeanor and, upon conviction, shall be punished by fine of not more than $1,000.00 for each offense, to be fixed by the court trying said case, and in addition thereto may be, in the discretion of the court trying said case, sentenced to hard labor for the county for a period not to exceed 12 months.

ALA.CODE § 34-23-13 (1975).  Chapter 23 mandates that "[t]he Alabama State Board of Pharmacy is vested with the authority to carry out the purposes of and enforce this chapter."

ALA.CODE § 34-23-90 (1975).   The Board has the power and duty to investigate violations of

this chapter, conduct hearings, invoke penalties and "institute any legal proceedings necessary to effect compliance with this chapter." ALA.CODE § 34-23-92 (1975).

The burden of demonstrating legislative intent to create a private right of action is high. As the Alabama Supreme Court has stated:

> 'One claiming a private right of action within a statutory scheme must show clear and convincing evidence of legislative intent to impose civil liability for a violation of the statute.' American Auto. Ins. Co. v. McDonald, 812 So.2d 309, 311 (Ala. 2001). C.B. v. Bobo, 659 So.2d 98 (Ala.1995)." Blockbuster, Inc. v. White, 819 So.2d 43, 44 (Ala. 2001). ....  The statute contains no language suggesting that the Legislature intended to create a private cause of action for any violation of those provisions.  The Legislature expressly reserved to the attorney general a cause of action for such violations, and Liberty National has presented no evidence to support the idea that § 22-21-7 creates or implies a private cause of action. American Auto Ins. Co., supra.  Accordingly, we conclude that Liberty National is not a party entitled to bring a private action for an alleged breach of § 22-21-7.

Liberty Nat. Life Ins. Co. v. University of Alabama Health Services Foundation, P.C.,  881 So.2d 1013, 1025-1026 (Ala. 2003) (footnote omitted); see also Crest Const. Corp. v. Shelby County Bd. of Educ., 612 So.2d 425 (Ala. 1992) (Competitive bid law benefits public and creates no enforceable rights in bidders.).  The court finds that, like the statutes construed in Liberty National, the language of the statute in question here indicates that there is no private right of action for an alleged breach of § 34-23-115.  Plaintiff has not shown clear and convincing evidence of legislative intent to impose civil liability for a violation of the statute.  It appears beyond a doubt that the plaintiff can prove no set of facts to support her claim of entitlement under § 34-23-115.

Plaintiff asserts that defendant's motions to dismiss did not address the possibility that plaintiff might have a contract claim, or any kind of tort claim other than an implied cause of action in tort arising from the statute.  Count Two recites the language of § 34-23-115, alleges

11

that defendant violated the statute, and that "Plaintiffs have been injured and damaged as a proximate result of this violation." (Amended Complaint, ¶¶ 25, 31). Count Two also alleges that "[t]hat provision of Alabama law is, as a matter of Alabama law, an implied term in the contract between the named plaintiff and the absent class members on the one hand, and the defendants on the other, to purchase prescription drugs from defendants." (Amended Complaint, ¶ 26). The amended complaint then states that "[t]he named plaintiff and the absent class members are entitled under applicable Alabama law to sue in this case to enforce their right under ALA. CODE § 34-23-115." (Amended Complaint, ¶ 32). Plaintiff contends that the reference to the implied inclusion of the provision in the contract between plaintiff and defendant gave defendant fair notice that plaintiff's claim includes a breach of contract claim. However, the Alabama Supreme Court has previously rejected the notion that common-law causes of action predicated upon the violation of a statute may be maintained when there is no private right of action under the statute itself. Blockbuster, Inc. v. White, 819 So.2d 43 (Ala. 2001). Plaintiff, on the other hand, contends that the more recent case of Blue Cross and Blue Shield of Alabama v. Hodurski, 899 So.2d 949 (Ala. 2004) rejected the view that under American Auto Ins. v. McDonald, plaintiff has no claim based upon a contract term which imports a requirement of Alabama statutory law. Hodurski held that "[s]tatutorily required provisions of an insurance contract are read into the policy, even if the policy itself does not contain the required provisions." Hodurski, 899 So.2d at 955. Hodurski relies on other insurance cases which have held that "if the statutory conditions are present, the courts will infer the existence of minimum uninsured motorist coverage notwithstanding the absence of a provision for such coverage in the insurance policy itself." State Farm Mut. Auto. Ins. Co. v. Scott, 707 So.2d 238, 241 (Ala. Civ.App. 1997) (citing North

America v. Thomas, 337 So.2d 365 (Ala.Civ.App. 1976) (emphasis in original).  The Scott Court cited by Hodurski stated that the mandatory insurance statute "becomes part of every policy as an implied term just as if it were written out in the policy itself." Id. (citing Ex parte Potete, 409 So.2d 429, 429 (Ala. 1981)).  "Where the inclusion of uninsured motorist coverage is mandatory under an act, unless specifically waived, the governing act states what the coverage shall include." Id. (citing State Farm Auto. Ins. Co. v. Baldwin, 470 So.2d 1230, 1232 (Ala. 1985)).  Defendant contends that this principal has only been applied to cases where a statute imposes a direct positive obligation that impacts the requirements of a particular type of contract, such as auto insurance contracts which are required to provide uninsured motorist coverage for their insureds.  In such cases, the obligation may be incorporated by law into a contract if the document is silent on the issue.  However, there is nothing in the ATPPPA that imposes a positive obligation on the defendant here.  Plaintiff, citing Ex parte University of South Alabama, 812 So.2d 341 (Ala. 2001), asserts that every contract must comply with what the law requires.  Ex parte University of South Alabama, citing Tuscaloosa County v. Children's Hospital, Inc., 486 So.2d 1302 (Ala. Civ. App. 1986), stated that "[a] medical provider can sue under [the Alabama Health Care Responsibility Act, Alabama Code 1975, § 22-21-290, et seq. ("AHCRA")], and the suit 'is in the nature of a suit on a contract implied by law.'" Ex parte University of South Alabama, 812 So.2d at 345.  However, the issue in Ex parte University of South Alabama was not whether the plaintiff had standing to sue, but whether an agreement by the University of South Alabama Medical Center to dismiss certain pending suits and to not file further lawsuits under AHCRA against Clarke and Escambia County, included, and therefore barred, the particular action in question.  The Court found that the "action is not one arising out of AHCRA.

Instead, USAMC bases its claim on the obligation imposed upon Escambia County by § 14-6-19, Ala.Code 1975." Id. at 345. Section 14-6-19 "allows a medical provider to sue to recover charges for medical services rendered to inmates in the county jail who are unable to pay for medicines or medical services." Id. (citation omitted). There was no question that plaintiff had a right to sue under the statute, only as to whether that suit was barred by the previous agreement.

The court finds Tuscaloosa County v. Children's Hospital, Inc., 486 So.2d 1302 (Ala. Civ. App. 1986) to be equally unavailing. Tuscaloosa involved a suit arising out of AHCRA. The question in that case was not whether the plaintiff had standing to sue under AHCRA, but which statute of limitations should be applied to the action: § 6-2-39(a)(5), which sets a one-year limitation for the commencement of an action "for any injury to the person or rights of another not arising from contract," or § 6-2-37, which sets a three-year limitation for the commencement of an action "to recover money due by open or unliquidated account." Ibid. The Court found that AHCRA "was intended to place the ultimate financial obligation for medical treatment of indigents upon the county in which the indigent resides" and the action was not analogous to actions arising ex dilecto. Tuscaloosa. 486 So.2d at 1303. The Court therefore concluded that the action was more in the nature of a contract claim and applied the three-year statute of limitation contained in § 6-2-37, rather than the one-year statute of limitations contained in § 6-2-39(a)(5) which has been applied to actions which arise ex dilecto. Id.

Moreover, even if mandatory statutes would be read into any contract between plaintiff and defendant, it is not clear that the provision of the ATPPPA raised by plaintiff would apply to the contract. The contract between plaintiff and defendant was for the purchase of medicine at the price offered. There was nothing inherently wrong with the contract itself. Plaintiff does not

14

contend that the agreement to sell the medicine at that particular price was unlawful; defendant could have charged that price to all their customers.  There was no mandatory requirement that defendant do anything else in relation to plaintiff.   According to plaintiff, the ATPPPA provision requires defendant to charge the same amount to plaintiff as to insured persons for the same prescription medicine.  Plaintiff contends that the fact that the ATPPPA requirement is phrased in the negative (requiring defendant to not sell to others at a lower price), rather than as a positive, is inconsequential, but cites no authority for that conclusion.

Plaintiff also contends that even if she has no right of action under the ATPPPA and has no action sounding in contract based on the ATPPPA, that she can nevertheless maintain an action for statutory tort under Alabama law.  Plaintiff asserts that the tort claims in this case constitute "statutory torts," which are also referred to as "negligence per se."  Plaintiff cites Norris v. City of Montgomery,  821 So.2d 149 (Ala. 2001) as support for her contention.  Norris involved an action against a police officer, among others, who had issued tickets to a Michael Perkins for the vehicle's "excessive smoke" and for "driving without first obtaining a driver's license." Id. at 152.  However, the officer failed to impound the vehicle as he was allegedly required to do under the circumstances pursuant to an Alabama statute.  Later that day, Michael Perkins struck another vehicle, killing one occupant and injuring five others. Id.   The Court held that the officer was not entitled to discretionary-function immunity for the following reason:

> To succeed on a claim of "statutory negligence" against a municipality, a plaintiff must first show the existence of a statute creating a mandatory duty to perform. The plaintiff must also demonstrate that he or she is among the class of persons the "statute was enacted to protect"; that the injuries were "of a type contemplated by the statute"; that the defendant "violated the statute"; and that the plaintiff's injuries proximately resulted from the violation. Thetford v. City of Clanton, 605 So.2d 835, 841-42 (Ala.1992).  Where these elements exist, discretionary-function immunity will not shield the actors or their supervisors from liability.  This is so

because the statute itself removes the discretion on which the immunity is based.

Id. at 153 -154.   The Norris case summarized the Thetford case, cited in the above passage as follows:

> The dispute in Thetford--in which this rule was applied--began when City of Clanton police officer Randy Morris investigated a report of domestic violence at the home of Michael and Shirley Ann Banks. Id. at 836-37. There, he discovered evidence that Mrs. Banks had suffered physical abuse at the hands of her husband, but he did not file a report of the incident as required by Ala.Code 1975, § 15-10-3(b).  When Mrs. Banks was subsequently beaten to death by Mr. Banks, Mary Thetford, the personal representative of Shirley Ann Banks, brought a wrongful-death action. The action alleged "that the [City of] Clanton police were guilty of statutory negligence ... because they failed to comply with § 15-10-3(b)." 605 So.2d at 842.

Id. at 154 (footnote omitted).   However, the Court finds the instant case to be materially different from the cases in which statutory negligence has been applied.   The injury caused by the violation in Norris and Thetford was not the violation itself; the plaintiffs were not suing to have the car impounded or to have the report filed.  The plaintiffs in Norris and Thetford claimed statutory negligence because the defendant's violation of the statutes essentially gave another person the opportunity to injure the plaintiff beyond the actual action or inaction prescribed by the statute.   In the case at hand, the only injury is the actual action or inaction prescribed by the statute.  The court finds that plaintiff does not have standing under the circumstances of this case to maintain an action in tort for the violation of ALA. CODE § 34-23-115.

Even if an action sounding in contract or in tort could be maintained for the violation of ALA. CODE § 34-23-115, defendant argues that plaintiff has misconstrued the purpose and application of the statute.  As noted above, plaintiff contends that the ATPPPA provision requires defendant to charge the same amount to plaintiff as to insured persons for the same prescription medicine.  Defendant contends that the legislative history and the language of the statute makes

16

clear that the purpose of the ATPPPA is to protect pharmacies (like the defendant) in their dealings with third-party payors.  According to defendant, if a cause of action exists under the TPPPA for claims stemming from reimbursement rates, it would be for a pharmacy to pursue against a third-party payor for insufficient reimbursement.  Section 34-23-115 does not suggest or compel conduct by pharmacists in regard to what they charge retail customers.  Plaintiff, on the other hand, asserts that if the court would only "go to the statute" and read its plain language, it would be clear that her interpretation is correct.  The court has gone to the statute and read it over and over again and still finds nothing in the statute that conflicts with defendant's interpretation of the statute.  As stated above, the statute provides the following:

> No agreement between a program administrator and a pharmacy shall establish reimbursement rates for services rendered to persons covered by the plan which are less than the usual and customary rates paid by consumers not covered by a third party plan for the same or similar services.

ALA. CODE § 34-23-115.  The court finds nothing in the statute that conflicts with defendant's interpretation of the statute or the interpretation of other courts.   If the Legislature had intended to prohibit pharmacies from charging cash customers more than it charges insured customers, it could have easily done so.  The statute does not mention retail consumers, retail prices for prescription drugs, or retail sales of prescription drugs.   Instead the Act appears to speak only to the reimbursement to pharmacies by third-party payors.  The District Court for the Northern District of Alabama discussed the statute in Blue Cross and Blue Shield of Alabama v. Peacock's Apothecary, Inc., 567 F.Supp. 1258 (N.D. Ala. 1983).  In Peacock's Apothecary, the Court ruled that the action, brought by a pharmacy seeking reimbursement from Blue Cross, was preempted by ERISA.  The Court stated that:

> The Pharmacy Act precludes employers and employees from structuring employee

17

      benefit plans that include third party prescription programs which call for
reimbursement rates that "are less than the usual and customary rates paid by
consumers not covered by a third party plan." Ala. Code § 34-23-115 (Supp.1982).
Although the Act directly regulates the agreements and relationships between
insurers and pharmacies, it effectively regulates what employers and employees
can and cannot include in employee benefit plans.

Id. at 1276.  Neither the parties, nor this court, have been able to find a case where a retail consumer has successfully used the ATPPPA to sue a pharmacy.  After reviewing the ATPPPA and the relevant case law, the court finds that the ATPPPA was not enacted to protect consumers cannot be the basis of plaintiff's instant suit.  Therefore, the court finds that Count Two of plaintiff's amended complaint is due to be dismissed.

### III. CONCLUSION

For the reasons stated above, defendant's motions to dismiss (Docs. 8 & 18) are **GRANTED,** and this case is hereby **DISMISSED**.

**DONE and ORDERED** this 14th day of September, 2007.

                                        /s/   Callie V. S. Granade
                                   CHIEF UNITED STATES DISTRICT JUDGE